MARVIN, Chief Judge.
From a 1991 judgment terminating her parental rights to her two children under the age of five years, the mother, through appointed counsel, appeals, contending that her being diagnosed as a schizophrenic, without more, is not sufficient to prove by clear and convincing evidence that she is an unfit parent.
We affirm.
FACTS
Chronologically, the events which led to the judgment are summarized:
On January 16, 1990, by instanter order, A.M. and E.M., ages one day and one year, four months, were placed in the care, custody, and control of the State. The order issued on a report that R.M., the mother, was refusing medical attention for herself and the infant she had delivered the day before.
R.M. had been taken to a state hospital on a coroner’s order, where it was found that after delivering her baby, she had cut the umbilical cord and had not delivered the placenta. After her condition was medically stabilized, R.M. was placed in the hospital’s psychiatric center, where she was diagnosed as a residual schizophrenic. With administered medication relatively controlling her condition, R.M. ceased exhibiting schizophrenic symptoms. After being released from the hospital, however, she stopped taking the medicine and again became schizophrenic.
*1218 The children were initially placed in foster care in 1990, where they have since remained. R.M. failed to cooperate with the state’s attempt to stabilize and unite the family. R.M. was hospitalized four times from 1990 to 1992 for her schizophrenia. Each time she was released, she neglected or refused to take or to be administered her medication. Such behavior is consistent and typical of schizophrenics, according to the expert witnesses.
On August 16, 1990, A.M. and E.M. were adjudicated children in need of care. The state thereafter worked unsuccessfully with R.M. to establish routine monthly visitations with the children. After R.M. attempted to kidnap the children, the state was relieved of the obligation of having to work with R.M. The order granting that relief was signed December 19, 1991. R.M. did not visit her children after that date.
R.M. was hospitalized for six weeks immediately preceding the termination hearing in 1992. R.M. talked incessantly and somewhat incoherently during the termination hearing. The court properly allowed her to make whatever statement she desired to make. The transcript reveals that her testimony, for four pages, was sometimes unintelligible. At one point, she insisted she was God.
Dr. Stephenson, a treating psychologist, testified R.M.’s behavior pattern placed her children at risk. Her history made it unlikely she could reform. Her treating psychiatrist, Dr. Ragsdill, stated that R.M., like other schizophrenics, is highly emotional and possibly dangerous, unless the medication controls the disease.
The trial court found R.M.’s circumstances satisfied three of the grounds necessary for termination of parental rights, specifically the grounds in Art. 1015(4), (5), and (7) of the Children’s Code. Only one ground, however, is required.
TERMINATION OF PARENTAL RIGHTS
Contending her circumstance is insufficient to show by clear and convincing evidence she is an unfit parent, R.M.’s counsel urges there is no evidence that she physically, mentally, or sexually abused her children.
Under certain circumstances, prior adjudication as children in need of care may form a basis for termination of parental rights. Ch.C. Art. 1015(4). To prove R.M.’s parental rights should be terminated under that article, the State must show:
(a) One year has elapsed since a child in need of care adjudication.
(b) The parent is unfit to retain parental control.
(c) The parent has shown no significant, substantial indication of reformation, and there is no reasonable expectation of [her] reformation in the foreseeable future.
Ch.C. Art. 1015(4).
The state must prove R.M. meets the three elements of Art. 1015(4) by clear and convincing evidence. Ch.C. Art. 1035. That evidence must allow the conclusion that termination is in the best interest of the children. Ch.C. Art. 1039.
CHILDREN IN NEED OF CARE
A.M. and E.M. were adjudicated children in need of care August 16, 1990. On the state’s petition, filed July 29, 1992, the termination hearing was held September 29, 1992. The judgment terminating R.M.’s parental rights was signed November 18, 1992. The one-year requirement of Art. 1015(4)(a) is satisfied on this record.
FITNESS AS A PARENT
The term “unfit” includes parents “whose medical or emotional illness, mental deficiency, behavior or conduct disorder ... makes the parent unable or unwilling to provide an adequate permanent home for the child[ren] at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.” Ch.C. Art. 1003(10)(c).
Dr. Stephenson and Dr. Ragsdill agreed that chances were very poor R.M. could maintain the stability necessary to create a nurturing environment in which to rear children for any length of time. R.M. suf *1219 fers from a severe mental illness. Medication does not guarantee absolute and continual control of schizophrenia even if strictly administered as prescribed, according to the experts. R.M.’s neglect and refusal to voluntarily take or to be administered the medicine as an outpatient is expected and is consistent with her illness. Dr. Stephenson opined that under any circumstances R.M.’s children would always be at risk of harm if they were returned to R.M.
R.M., on this record, is shown, by clear and convincing evidence, to be “unfit to retain parental control” under Art. 1015(4)(b).
REFORMATION
Part (c) of the Article is also satisfied. R.M. has shown no indication of reformation since her children were taken from her. Her failure to take or be administered the medication led to the necessity of her being periodically hospitalized. The experts agree there is no reasonable expectation that R.M. will reform in the foreseeable future.
The experts established that R.M.’s history is the best predictor of her future behavior. The only reasonably predictable consistency in R.M.’s life, according to the experts, is her failure to take the medication.
BEST INTEREST OF THE CHILDREN
Dr. Stephenson testified the type of uncertainty A.M. and E.M. daily face as foster children is a continuing traumatization which will probably lead to their overwhelming anxiety. This doctor concludes that because the children cannot be reunited with R.M., they should be freed for adoption to gain more stability in their lives.
CONCLUSION
The trial court correctly found that the evidence was clear and convincing that the best interest of the children mandated the termination of R.M.’s parental rights.
DECREE
At R.M.’s cost, the judgment is AFFIRMED.